### THE STATE v. JEREMIAH GARTHWAITE.

1. In the construction of statutes, other statutes *in pari materia* must be regarded; and when a term or phrase used in any statute is ambiguous, that meaning will be given to it in which it was used in former legislation on the same subject.
2. When a defendant is discharged from an indictment for want of prosecution by virtue of the first section of the "act relative to indictments" he is discharged only from his imprisonment or recognisance, but is not acquitted of the crime or discharged from its penalty.
3. It would *seem,* if a defendant be "discharged" for want of prosecution upon an indictment, that he cannot be afterwards arraigned or tried under that indictment.
4. But such discharge is no bar to a subsequent indictment for the same offence, or to the trial upon it; and a plea of such former indictment and discharge is bad upon demurrer.

---

This was an indictment for assault and battery, found in the Burlington Oyer and Terminer, and was removed into this court by a *certiorari,* allowed upon application of the defendant. To this indictment the defendant pleaded that an indict-

ment had before been found against him in the Burlington Oyer and Terminer for the same offence, and that he was, by order of the court, discharged because the indictment was not brought to trial at the term when found, or at the next term.

To this plea a demurrer was filed on part of the state.

The argument of this demurrer was had before the CHIEF JUSTICE and Justices NEVIUS and OGDEN.

*Dayton* for defendant; *Elmer*, Attorney General, for the state.

The CHIEF JUSTICE. The defendant, to an indictment for an assault and battery, pleaded that a previous indictment, found against him for the same offence, not having been tried at the term or session in which issue was joined, or the term after, it was ordered by the court that the defendant be, and he was thereby *discharged*. To this plea there is a general demurrer on the part of the state.

This demurrer presents for consideration the true construction of the first section of the " act relative to indictments," *Rev. Stat.* 292. That section provides " that every indictment shall be tried the term or session in which issue is joined, or the term after, unless the court, for just cause, shall allow further time for the trial thereof; and if such indictment be not so tried, as aforesaid, the defendant shall be *discharged*." To sustain the plea the construction given to the act must be, that the defendant is discharged not only from imprisonment and from his recognisance, but also from further prosecution of the indictment and from the penalty of the crime itself. The term " discharge," in its proper signification, may import either of these meanings. It may mean a discharge from imprisonment without trial, a discharge from the further prosecution of the indictment, or a discharge from the legal penalty of the crime. The section itself throws no light upon the true intent of the law makers. We must look elsewhere to discover it.

The earliest legislation in New Jersey upon this subject was an act for preventing malicious prosecutions by informations, passed March 11, 1713–14, (*Allinson's Laws* 23). The four-

teenth section of this act provides that no person shall be disturbed in his liberty or estate upon pretence of any misdemeanor committed, otherwise than by presentment of the grand jury or by information by order of the governor, signed in counsel, for such prosecution ; and the party so prosecuted shall be brought to trial the second court after such information filed, *or be discharged the court without paying of any fees.* By the second section it is enacted, that any person prosecuted by information, and brought to trial the second court, and acquitted by the verdict of twelve men, *shall be discharged the court without paying of any fees.* The same phraseology is used in both sections. Whether there is a failure to prosecute, or the defendant be acquitted upon trial, in either event it is enacted that the defendant " be discharged the court without paying of any fees." Now, in the second section, the direction that the defendant *be discharged,* cannot import that the defendant should thereby be absolved from the crime or its penalty. He had already been acquitted by the verdict of a jury of the crime charged in the indictment, and that acquittal was a bar to all further prosecution for the same offence. He could be, by the order of the court, only discharged without payment of fees from further attendance upon court and from imprisonment, or recognisance of bail to that end. If this be the only legitimate meaning and effect of the term " discharged," in the second section, it must have, it would seem, the same import in the first section. It is true that if a party is discharged under the second section he can never again be prosecuted or tried for the same offence ; but that is not by virtue of the discharge from the court, but by virtue of his acquittal by the jury. In this act the term " discharged " must be held to import merely a release from imprisonment and from bail.

The next act of legislation is " an act for preventing malicious prosecutions on indictments and other suits of the crown, and rectifying sundry abuses in the proceedings thereon, passed February 10, 1727–8, (*Allinson's Laws* 73.) It appears, by the preamble, that the indictments and other suits had been maliciously preferred and carried on against people altogether innocent, who on trial by the country had been fairly acquitted,

and yet had been condemned to the payment of large sums of money for the costs of such prosecution ; and for the prevention of this abuse it was enacted, " that on all indictments or other suits at the suit of the crown, whenever the jury who try the cause shall find a verdict for the defendant, or whenever the judgment of the court shall be given for the defendant, either after verdict on demurrer or for quashing any such indictment, no costs, on any pretence, shall be awarded against such defendant ; but the said defendant, on such verdict found for him, or judgment given in his favor, shall be, and is *hereby thereof acquitted and discharged.*" The provision is, that whenever judgment shall be given for the defendant, either after verdict or upon demurrer, or for *quashing* the indictment, he shall be acquitted of the costs and *discharged. Discharged,* not surely from the penalty of the crime, for of that a defendant is never discharged by quashing the indictment ; nor can it be intended that he shall, by force of the act, be discharged from the indictment, for of that he is already discharged by the order to quash. The term, then, can only import that he is discharged *from imprisonment and from bail.* The import of the phraseology of this act is the more important, as it is the foundation of the act of 1799, now under consideration. It remained in force until repealed by the act of 1799, and its material provisions will be found incorporated in the latter act.

Before considering the provisions of this act, it may be material to advert to another enactment upon the same subject, contained in the seventh section of the " act for preventing the injury of illegal confinement, and better securing the liberty of the people." This act, usually denominated the " *habeas corpus* act," though passed by the British parliament in the 31st year of *Car.* II, A. D. 1679, was not enacted in this state until March 11, 1795, after the revolution. *Paterson* 168. By the seventh section, which is substantially the same in both acts, it is enacted, that if any person, committed for certain specified offences plainly expressed in the warrant of commitment, upon his petition in open court the first week of the term or the first day of the sessions of Oyer and Terminer or general jail delivery, to be brought to trial, shall not be indict-

ed in the next term after commitment, the court shall, upon motion made in open court the last day of term, set such prisoner at liberty *upon bail,* unless it appear, upon oath or affirmation, that the witnesses against the prisoner could not then be produced. And if any person committed as aforesaid, upon his petition in open court the first week of the term or the first day of the sessions of Oyer and Terminer or general jail delivery to be brought to his trial, shall not be indicted and tried the second term after his commitment, or upon his trial shall be acquitted, he *shall be discharged from his imprisonment. Rev. Stat.* 288, § 7. The last clause of this section provides for the discharge from imprisonment of persons committed for certain specified crimes, and who are either acquitted or who are not tried the second term after their commitment, provided they petitioned the court on the first day of the term to be brought to trial. The discharge, in very terms, is to *be from imprisonment.* And of necessity it cannot be from the indictment, nor from its penalty, because, in contemplation of the law, the discharge may be by virtue of a writ of *habeas corpus* by authority of a tribunal having no cognizance of the indictment or of the crime. By a subsequent section of the *habeas corpus* act, as enacted in this state, the act of March 11, 1713–14, is repealed. The English act applied only to *treason* and *felony.* The New Jersey act, of 1713–14, applied only to *misdemeanors,* and, it might seem, was designed to supply what was regarded as an omission in the *habeas corpus* act as well as to prevent the detention of the prisoner for fees.

So stood the law on the 2d of February, 1799, when the act relative to indictments, now under consideration, was passed. The first section provides that every indictment shall be tried the term in which issue is joined, or the term after, or that the defendant shall be discharged. It embodies the provisions both of the *habeas corpus* act and the act of 1713–14. It extends the provisions of the *habeas corpus* act to every indictment, as well for misdemeanors as for felonies. It requires the discharge of the defendant, whether he petition to be tried or not. The second, third, and fourth sections of the act contain, in a somewhat modified form, the provisions of the act of

1727–8. In all the acts whose provisions are embodied in the act of 1799, the term "discharge" imports, as we have seen, merely a discharge of the defendant from his recognizance or from imprisonment. By a well settled rule of construction, the same import should be attached to the same phrase in all the acts in *pari materia*. Hence, in the act under consideration, the legislature must be regarded as directing that the defendant, for want of due prosecution of the indictment, should be discharged from imprisonment or from his recognizance, and not from the indictment or from the legal penalty of the crime.

This conclusion will be found supported by a view of the legislation of our sister states. In Pennsylvania and North Carolina the provisions of the seventh section of the *habeas corpus* act (31 *Car.* II.) have been substantially adopted, and appear to be the only legislative provisions of those states to secure a speedy trial in criminal cases. *Dunlop's Laws* 142 (2*d* ed.), act of 1785, § 3; 1 *Rev. Stat.* (*N. Car.* 1837,) 316, § 9.

In New York, Maine, Massachusetts, and Ohio, their enactments extend only to discharging the prisoner from confinement or from his recognizance for want of prosecution of the indictment. 2 *Rev. Stat. N. Y.* 3*d* ed., 821, § 28, 29, 30; *Rev. Stat.* (*Maine*) 1841, 748, § 14, 15; *Rev. Stat.* (*Mass.*) 1836, 762, § 13; *Rev. Stat.* (*Ohio*) 1841, 726, § 13.

In Georgia, a more stringent provision is made for the protection of the prisoner. By the law of that state, it is enacted that "any person against whom an indictment is found for any offence not affecting life may demand a trial at the term when the indictment is found, or at the next succeeding term thereafter, which demand shall be placed on the minutes of the court; and if such person shall not be tried at the term when the demand is made, or at the next succeeding term thereafter, provided that at both terms there were jurors empanneled and qualified to try such prisoner, then he or she shall be absolutely *discharged* and *acquitted of the offence* charged in the indictment. *Hotchkiss' Stat. Laws of Georgia* (1845) 791, § 64.

The authorities appear to warrant the use of the strong language imputed to Chief Justice Kirkpatrick upon an application to discharge a defendant from an indictment, *viz.* that courts never *discharge* from an indictment. That must be done by a verdict of acquittal or a judgment of the court upon a question of law. Courts may discharge from imprisonment and from recognizance, but not from an indictment.

It is unnecessary now to decide a point which was mooted at the bar upon the argument, *viz.* whether a defendant thus discharged can afterwards be tried upon the same indictment, admitting it to stand in full force. There is certainly serious embarrassment in the way of such a proceeding. The spirit of the law, which requires that the defendant should be discharged, forbids that he should be at once again arrested and imprisoned or held to bail. If this may be done, the law is a nullity; and if it may not be done, how is the defendant ever to be placed upon trial, except by his voluntary consent? Admitting, however, that the discharge operates as an effectual bar to a further prosecution of that indictment, may it be pleaded as a bar to another indictment for the same offence?

The books furnish us no precedent of a similar plea. The sentiment of the profession, for many years, is believed to have been adverse to the validity of the defence; and although we have no reported adjudication, we have undoubted assurance that the opinion of that most accurate common law lawyer, Chief Justice Kirkpatrick, was against it.

But upon principle the plea cannot be valid. The utmost effect that can be attributed to the discharge, is that of an abandonment of the prosecution. It cannot be higher or greater than that of a *nolle prosequi*, which is an open and direct renunciation of the further prosecution of the indictment.

But it is well settled, that although the effect of a *nolle prosequi* is to put the defendant " without day," it does not at all operate as an acquittal, nor can it be pleaded as such. It is simply a discharge of the particular indictment upon which it is entered, and is no bar to future indictments for the same offence. *Goddard* v. *Smith,* 1 *Salk.* 21; *S. C.* 2 *Salk.* 456;

*S. C. 6 Mod.* 261 ; 1 *Chit. Cr. Law* 480 ; *Com. Dig. " Indict-ment " K.* 1 ; *Commonwealth* v. *Wheeler,* 2 *Mass.* 172.

The plea is therefore invalid, and the demurrer must be sustained.

NEVIUS and OGDEN, Justices, concurred.